JiKLEES, Judge.
Defendant-appellants Kyle Rucker, The Alumni Investment Co., Inc. (TAIC) and Delta Kappa Epsilon Fraternity (DEKE) appeal the trial court’s decision to grant a preliminary injunction, as requested by the plaintiff-appellee, the City of New Orleans, to prohibit the use of a fraternity house in an area zoned multi-family residential. Defendant-appellants also appeal the trial court’s decision to dismiss their exception of prescription. Defendant-appellants have also filed a writ application concerning the issues which they have appealed; we have consolidated that writ application with this appeal.
This action involves the use of the property at 842 Broadway St. as a fraternity house by the DEKE fraternity in violation of the Comprehensive Zoning Ordinance (CZO). Defendant-appellant TAIC acquired the property in question from CGC Corporation in August 1994. CGC Corporation acquired the property at 842 Broadway St. in 1987 and the building was converted from two residential apartment units into three units occupied by no more than four persons each.
During the period from 1987 through Spring 1994, the residents of these three apartments were members of BEGGARS, a local fraternity connected with Loyola University. There were complaints during this time that the property was being used as a fraternity house but the owner and residents consistently maintained that the building was being used as a three family dwelling and inspections by the Department of Safety and Permits did not contradict this.
In 1992, CGC Corporation made two applications to the Department of Safety and Permits: one was an application for a Use and Occupancy Certificate for a fraternity *559 house and the other was an application for a sign to read BEGGARS in Greek letters.
|2CGC was notified by letter dated October 14, 1992 that 842 Broadway St. had not obtained a legal nonconforming status as a fraternity house. Although CGC was advised in the letter of its right to appeal the decision, no appeal was filed and presumably CGC accepted this ruling. In fact, CGC agreed to comply with the CZO. Thus, CGC’s failure to appeal the City’s decision, as well as its affirmative commitment to comply with the CZO, estop it and its successor in title TAIC from claiming that the application for nonconforming use status constituted notice to the City to begin the running of prescription.
Concerning the application for the sign, the Board of Zoning Adjustments approved the sign as a permitted identification for a multiple family dwelling. This ruling was appealed by an adjoining property owner who argued that rather than identifying a multiple family dwelling, the sign identified a fraternity house. After a hearing in January 1993, the Board of Zoning Adjustments ruled that the building was a multiple family residence and the sign was permitted regardless of the content of the sign.
There were no further complaints received by the City after the Board of Zoning Adjustments Ruling in January 1993 until after TAIC purchased the property in August 1994 and it was being occupied by members of Delta Kappa Epsilon fraternity. An inspection of the building in January 1995 revealed that the budding was not being occupied as three separate apartments but rather as a fraternity house. The record shows that counsel for the defendant-appellants responded to the violation notice and advised the City that the violations would be corrected. There was no claim of its right to be a fraternity house. However, in February 1995, a reinspection revealed that no changes had been made and a second violation notice was mailed. The defendant-appellant’s failure to comply with these violations resulted in the instant lawsuit being filed in May 1995.
RThe defendant-appellants argue that the trial court erred in granting the preliminary injunction and dismissing its exception of prescription. This argument is based on the assertion that 842 Broadway St. has been used as a fraternity house since 1987. The defendant relies on various documents of written notice to the City dating from September 1992 through January 1993 that a fraternity house was operating at 842 Broadway St. to prove that the City had notice more than two years prior to the filing of the lawsuit.
However, there is evidence in the record of a letter dated January 9, 1993 in which CGC’s attorney of record, Matthew Chene-vert, states that there was no illegal or improper use of the property and that it was being utilized in conformance with the RM-1 zoning as a three family dwelling. The letter explains the intention of CGC to comply with the CZO:
“In her application for appeal ... the applicant refers to the subject property as ‘a fraternity house’ ... The property owner [CGC] denies that there is any illegal or improper use of the property. On May 13, 1987, CGC Corporation applied for a permit to make structural repairs to convert the building from a 2-unit to a 3-unit building. A permit was issued ... The application and the permit show that the use intended is in .conformity with RM-1 classification under the then existing Zoning Ordinance ... At the hearing, witnesses will be available to attest to the fact that the use of this premise has been unchanged from the time of its first occupancy under the current ownership. Since 1987, CGC Corporation has leased the property on a room by room basis to 12 or fewer tenants.”
By stating that there was no illegal or improper use of the property and that it was being utilized in conformance with the RM-1 zoning as a three family dwelling, CGC lost any claim to accrual of nonconforming fraternity house use status.
Also, TAIC confirmed its desire to conform to the CZO as a three family dwelling through a letter from TAIC’s counsel, Kevin O’Bryon, dated February 6, 1995. In this letter, he responded as follows:
*560 “Please be assured that the owner fully desires to cooperate and voluntarily comply ... I invite you to reinspect the premises to confirm that it meets all requirements for use as a RM-1 multiple family residence.”
| ¿At the next inspection, there was no evidence of compliance and thus the City filed this lawsuit.'
Based on these letters, the City had no reason to suspect a violation. If 842 Broadway St. was used as a fraternity house since 1987, then CGC’s statements in Mr. Chene-vert’s letter of January 1993 were misleading and the City had no notice that a possible violation existed. Even if the property had been used as a fraternity house before 1993, prescription was interrupted by CGC’s stated compliance with the three family dwelling provisions. City of New Orleans v. Howard, 406 So.2d 718 (La.App. 4th Cir.1981). According to Howard, the actual length of time of such compliance is immaterial and a new prescriptive period does not begin to run until a new notice is received by the City.
Defendant-appellants rely on City of New Orleans v. C. Napco, Inc., 591 So.2d 1338 (La.App. 4th Cir.1991), writ denied, 594 So.2d 891 (La.1992) to establish that the City had written notice of a zoning violation, that two years passed with no action by the City and prescription had run under R.S. 9:5625. Napco is easily distinguishable since there was never any denial of the violation by the defendants in Napco. However, in this case, both TAIC and CGC, along with their various tenants, intended to occupy 842 Broadway St. in compliance with the CZO to qualify as a three family dwelling.
In his Reasons for Judgment, Judge Katz noted that twelve individuals of the DEKE fraternity could reside in the premises provided that only four were in each apartment; however, this does not permit the twelve individuals under the guise of living together to conduct the activities of the fraternity. Judge Katz stated that the only way the City could ensure that the individuals were not covertly conducting activities of the fraternity would be to have constant unannounced inspections which would surely violate the right of privacy of these twelve individuals.
15The CZO does not permit a property owner to pick and choose the occupancy category, and 842 Broadway St. was either a three family dwelling or a fraternity house during the period from 1987 through 1992. Since CGC elected to be a three family dwelling in January 1993, all previous use became irrelevant. Thus, the trial court was correct to grant the preliminary injunction to prohibit the use of the property at 842 Broadway St. as a fraternity house.
As well, Judge Katz noted in his Reasons for Judgment that the defendant-appellants failed to meet their burden of proof that prescription had run. Based on the letters from both CGC and TAIC stating their intention to comply with the CZO, the trial court was correct to dismiss the defendant-appellant’s exception of prescription.
Accordingly, we affirm the trial court’s judgment granting the City’s petition for preliminary injunction and the judgment dismissing defendant-appellant’s exception of prescription.

AFFIRMED.